**Charles Sinclair, Plaintiff-Appellant, v. Joseph Thomas, Defendant-Appellee.**

**Gen. No. 50,309.**

First District, Third Division.

December 14, 1967.

John C. Mullen, of Chicago (James P. Chapman, of counsel), for appellant.

Ross, Kralovec, Sweeney & Marquard, of Chicago (George E. Sweeney and Edward V. Scoby, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff sues to recover for personal injuries sustained while riding in a car driven by the defendant. At the close of all the evidence the court directed a verdict in favor of the defendant and entered judgment thereon. Plaintiff's motion for a new trial was denied. On appeal, the sufficiency of the motion is questioned, defendant contending that it is too vague and general to meet the requirements of section 68.1(2) of the Civil Practice Act, Ill Rev Stats, c 110, § 68.1(2) (1965). The Supreme Court has resolved this question by its recent holding that where a verdict is directed, the party adversely affected need not file a post-trial motion to preserve for review any errors which may have occurred. Keen v. Davis, 38 Ill2d 280, 230 NE2d 859 (1967). Therefore, notwithstanding the general language of plaintiff's post-trial motion, the points raised in the brief were properly preserved for review.

The principal point made by the plaintiff is that the evidence was sufficient to require the submission of the case to the jury on the issue of liability. He further

argues that he was not a guest in defendant's automobile and accordingly was not required to prove the defendant guilty of wilful and wanton misconduct.

Plaintiff and the defendant Joseph Thomas had been business partners and co-owners of a tavern called "Charlie's and Joe's Club." In November 1956 the plaintiff Charles Sinclair became the sole owner of the business and changed its name to "See Sinclair's For Fun Club." Defendant remained liable however as co-lessee on the tavern lease and as co-obligor on a chattel mortgage. About 12:30 a. m. on September 14, 1957, the date of the occurrence, defendant visited the tavern to discuss his release on those obligations. Plaintiff agreed that the matter should be discussed, but asked the defendant to wait until he closed the tavern at 2:00 a. m., at which time they could discuss it over dinner. At about 2:15 a. m., the parties entered defendant's car and set out for an all-night restaurant some seven or eight blocks from the tavern.

It appears from the undisputed testimony that defendant drove in a normal manner; that he was not intoxicated; that the car lights were on and the streets were dry. They proceeded east on 63rd Street toward the intersection of Lowe Avenue, in Chicago. At that point 63rd Street has two lanes of traffic in each direction and the intersection is spanned by an elevated viaduct supported by pillars. Another car was proceeding in the same direction next to the defendant's vehicle. At that time the defendant's vehicle struck one of the viaduct pillars. Plaintiff described the accident in the following manner:

"As we approached 63rd and Lowe, we were driving along in a normal fashion. As we approached the bridge, I said, 'watch out,'—put my hands up over my face, and that's all. He hit something hard, and I blacked out."

117

The defendant did not testify. He did however introduce in evidence a statement obtained by an insurance adjuster. It was signed by the plaintiff and his wife and contained the following account of the occurrence:

"Suddenly, some guy on my side of the car was crowding us over to pass us to the right. It seemed to me Joe Thomas moved to his side to give some room to pass. About that time we hit an elevated pillar, and the car that caused all this, who crowded us over, just kept on going and never stopped."

Plaintiff acknowledged his signature on the statement, but when questioned concerning it, he testified:

"This document does not refresh my recollection that I ever told anyone that a car was traveling along on my right suddenly crowded Mr. Thomas' car over and caused him to run into the elevated pillar. I never said that."

Later, on cross-examination he said, "No car was crowding us over into that pillar that night."

The insurance adjuster Robert Mielchen testified for the defense that he had interviewed Sinclair about eight days after the accident; that he took Sinclair's statement down in longhand and that as Sinclair had broken his glasses, he asked Mrs. Sinclair to read the statement aloud to her husband and have him affirm the contents, which was done. The statement was then admitted into evidence without objection. This was the only evidence presented by the defense. Mielchen's testimony was contradicted by Mrs. Sinclair who testified that she signed the statement but did not read it. She explained that her husband was sick in bed and that she wanted to get the adjuster out of the house.

■■ The rule with respect to the direction of verdicts has recently been modified by the Supreme Court of Illi-

nois and now the sole question is whether all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence can be sustained. Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504. Before testing the sufficiency of the evidence, we must determine whether the plaintiff was required to prove wilful and wanton misconduct or simply negligence. The first question therefore is whether plaintiff was a guest in defendant's automobile within the meaning of the Guest Statute, Ill Rev Stats, c 95½, § 9–201 (1965), which provides in pertinent part:

> "No person riding in or upon a motor vehicle . . . as a guest without payment for such ride . . . shall have a cause of action for damages against the driver or operator of such motor vehicle . . . for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle. . . ."

Plaintiff contends that he was not a guest in defendant's car because the purpose of the trip to the restaurant was to discuss business which would benefit the defendant; that is, the termination of defendant's responsibility for the obligations of the preexisting partnership.

██ Although the statute refers to a "guest without payment," courts have held that a passenger may recover for simple negligence even though he has made no monetary payment for the transportation. In construing the statute the courts have looked to the purpose of the trip itself to determine the relationship between the parties and have made a distinction between rides which have business aspects and those which have social implications. If the transportation confers only a benefit incident to hospitality, companionship or the like, the

119

passenger is a guest, but if it is primarily for some objective or purpose of the operator, the passenger is not a guest within the meaning of the statute. Connett v. Winget, 374 Ill 531, 30 NE2d 1; Dirksmeyer v. Barnes, 2 Ill App2d 496, 119 NE2d 813; Gass v. Carducci, 37 Ill App 2d 181, 185 NE2d 285; Perrine v. Charles T. Bisch & Son, 346 Ill App 321, 105 NE2d 534. In the instant case the parties intended to discuss business affairs; that is, the winding up of a partnership in which both were interested. The fact that one may have had a greater interest than the other is of no consequence. Plaintiff was not the recipient of a social amenity and was not a guest within the meaning of the statute. Therefore he is not required to prove more than ordinary negligence.

■■ When it appears from the evidence, as in the instant case, that the driver of an automobile struck an object such as a viaduct pillar which under ordinary circumstances could be readily avoided, it is incumbent upon him to show that the accident was not the result of negligence on his part. Murphy v. Kumler, 344 Ill App 287, 100 NE2d 660; Tomlinson v. Chapman, 24 Ill App2d 192, 164 NE2d 240; Pearlman v. W. O. King Lumber Co., 302 Ill App 190, 23 NE2d 826. The written statement contained some explanation for the collision, but plaintiff denied material portions of that statement. Whatever value it might have for impeachment purposes will be for the jury to determine.

The court erred in directing a verdict for the defendant. The judgment is reversed and the cause is remanded for a new trial, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded.

SULLIVAN, P. J. and DEMPSEY, J., concur.